## Scott's Estate.

*Wills—Direction to incorporate business—Discretion of executors—Election not to incorporate—Exhaustion of powers—Executors and administrators.*

1. Where a testator expresses a desire that his business shall be continued, and directs his executors to incorporate it, in such a way as not to interfere with the immediate settlement of his estate, but authorizes them, if incorporation is impossible, to continue it under any arrangement they think best, and the executors, without giving up the idea of incorporation, continue the business under a partnership form until better tax conditions should prevail, they cannot after the expiration of two years from testator's death organize a corporation to take over the business.

2. In such case, the direction that the course to be pursued by the executors should not interfere with the immediate settlement of the estate, indicates a limitation upon the powers of the executors, and shows that an indefinite postponement was not intended.

3. The word "immediate" should be reasonably construed, and had the corporation been formed or steps to that end been taken, for example, within the time ordinarily required by law for the settlement of the estate, it would have been in time.

4. When the executors, for reasons deemed sufficient, adopted the partnership form, they exhausted the powers conferred upon them.

*Wills — Conditions — Performance — Representatives of beneficiaries.*

5. Persons claiming through beneficiaries named in a will can assert no higher rights than the original beneficiaries; they must perform any condition the person to whose rights they succeed would have been obliged to perform.

Assignment of Error—Opinion of the Court.    [280 Pa.

Argued January 14, 1924.   Appeal, No. 158, Jan. T., 1924, by G. Harlan Wells, executor of estate of Martha Scott Wells, deceased, from decree of O. C. Phila. Co., Jan. T., 1923, No. 428, dismissing exceptions to adjudication in estate of William H. Scott, deceased.   Before FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.   Reversed.

At the audit, before GEST, J., the appellant claimed one-sixth of the entire residuary estate of the testator, maintaining that the proceedings to incorporate were invalid.   The claim was disallowed.   Exceptions to the adjudication were dismissed in an opinion by THOMPSON, J.   G. Harlan Wells, executor of Martha Scott Wells, deceased, appealed.

*Error assigned* was, inter alia, decree, quoting it.

*M. B. Saul,* of *Saul, Ewing, Remick & Saul,* for appellant.—The whole scheme of distribution of testator's business is predicated on the theory that a corporation would be formed to take over his business immediately upon his decease, unless his executor deemed such course impracticable.   That they deemed such course impracticable and decided not to incorporate is conclusively borne out by the testimony and exhibits.

Where a condition subsequent is or becomes impossible, the gift remains discharged of the condition: Culin's App., 20 Pa. 243.

The power ceased by its exhaustion: Hetzel v. Barber, 60 N. Y. 1.

*John Blakeley,* of *Middleton, Blakeley & Richardson,* for appellee.

OPINION BY MR. JUSTICE FRAZER, March 10, 1924:

William H. Scott, decedent, died April 12, 1920, leaving a will in which he provided, inter alia: "It is my

desire that the business now carried on under the name of Allen, Lane & Scott, shall be continued for the benefit of my descendants, but in such way if possible as will not interfere with the immediate settlement of my estate. For this purpose I direct that my executors shall cause a corporation to be incorporated under the name of Allen, Lane and Scott," etc. Following this was a detailed provision concerning the business in question and the method of distribution of the stock or assets among the beneficiaries, with a further provision that "if any stockholder desires to sell or dies or if any stockholder not being an officer or employee of the corporation resign or be removed from such office, or employment, the remaining stockholders, or such of them as may desire so to do, shall have the right within sixty days after notice of such desire to sell or within sixty days after such resignation, removal or death, to purchase said stock at its then book value less ten per cent." There was a final provision to the effect that "in case it should become impracticable for any reason to form said corporation, I authorize my executors to make any other arrangement they may think best for continuing my capital in the business either as a loan or in a special partnership or otherwise, but I prefer the corporation plan and only give this power in order to provide for the case of that proving impossible or specially undesirable for some reason."

At the time testator died the Federal Income Tax Laws included what was known as an "excess profits tax" on corporations and the executors were advised that if the corporation were formed it would result in a much larger tax than would be imposed upon the company as a partnership, and that it was generally believed Congress would, at its next session, repeal or modify the excess profits tax law. It was, therefore, deemed advisable to wait the action of Congress. In the meantime the business was registered in the office of the secretary of the Commonwealth and also in the local prothonotary's of-

fice, as a partnership under the Fictitious Names Act of June 28, 1917, P. L. 645. The business was thus continued until June 30, 1922, at which time the books were closed preliminary to the formation of a corporation. A charter was granted on September 5, 1922. There is a conflict of testimony as to the intention of the executors at the time the company was registered as a partnership; the auditing judge, however, found, and this finding is sustained by the testimony, that they did not definitely elect not to incorporate, but merely intended to delay incorporation until the expected change in the corporation income tax law had been made. The court also found: "There can be no question that their delay was induced solely by the danger of taxation and from a laudable desire to avoid it......Their action taken under advice of counsel was prudent and doubtless resulted in saving the payment of unnecessary taxes."

The above findings of fact are sufficiently supported by the evidence and make it unnecessary for us to further consider the argument of appellant that there was no thought of incorporation on the part of the executors until over two years after testator's death. Nor are we impressed by the argument made by appellant that the conditions of the will had become impossible of performance because of the death of one of the children before the date of incorporation. Those claiming through the beneficiaries named in the will could assert no higher rights than the original beneficiaries. They must perform any condition the person to whose rights they succeed would have been obliged to perform. Testator had the right to impose such conditions as he saw fit so long as he violated no law, and those who desire to accept the benefits of his bounty should not be heard to complain of the burdens attached to his stipulations. We must, accordingly, consider this case from the standpoint of the powers of discretion given the executors to continue the capital in the business for the benefit of those entitled to the property.

The mere fact that the corporation was not formed immediately would not seem important, so long as the intention was to form a corporation within a reasonable time consistent with the limitation placed upon the power, to wit, that the delay should not interfere with the "immediate settlement and distribution" of the estate. The word "immediate" must be reasonably construed, and had the corporation been formed or steps to that end been taken, for example, within the time ordinarily required by law for the settlement of the estate, no criticism could have been made because of delay. However, the language of testator plainly indicates a limitation upon the powers of the executors in taking action, and that an indefinite postponement was not intended. The court below concluded a postponement to await the possible repeal or change of the Federal Excess Profits Tax Law was not an unreasonable delay. However, the question naturally arises, if a delay for a period of two years to await an uncertain event were justifiable, would a delay of three or four or more years for the same purpose have also been reasonable and proper? If so, could a limit be placed upon the power of the executors? Such construction would clearly be inconsistent with testator's direction that any arrangement made should not interfere with the immediate settlement and distribution of his estate. The executors evidently concluded it was "specially undesirable" for business reasons, to form a corporation at that time, owing to the additional expense to the company under the income tax law. They had the right, in their discretion, to elect to incorporate, notwithstanding such expense, or to follow another plan. They were without power, however, to permit such an alternative plan to interfere with the immediate settlement and distribution of the estate unless it were not possible to avoid it. There was nothing impossible about the distribution of the shares and profits of a partnership, and the executors, having adopted that course, for reasons deemed sufficient, we are of the opin-

ion they thereby exhausted the powers conferred upon them and cannot change the course chosen at an indefinite future time against the wishes of the beneficiaries of the estate, even though the proposed change may be the result of a previously formed plan to be carried out in the future.

The decree of the court below is reversed and the record remitted for further proceedings not inconsistent with this opinion.